

**SO ORDERED.**

**SIGNED this 11 day of January, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| LARRY EUGENE DUCKETT and | ) | No. 05-14878 |
| DORISELL WHITE DUCKETT, | ) | Chapter 13 |
| | ) | |
| Debtors | ) | |

**M E M O R A N D U M**

This matter is before the court on the Objection to Claim of Ocwen Federal FSB that the debtors filed in this case on September 13, 2005. All issues presented by the objection have been resolved by agreement of the parties, except for the debtors' assertion that the fee for prepayment of the loan in question constitutes an unreasonable fee that should not be allowed under 11 U.S.C. § 506(b). After considering the briefs of the parties, hearing the arguments of counsel, and affording

the parties an opportunity to present evidence, the court will disallow the "prepayment fee" portion of the claim.

On or about February 10, 2003, the debtors signed a promissory note in favor of EquiFirst Corporation, agreeing to repay the sum of $77,900 with interest at a rate of 7.85% per annum until February 15, 2006, with the interest rate thereafter to change to a floating rate that would not be less than 7.85% nor more than 13.85%. The note also provided for a "prepayment penalty":

> If I prepay this loan in full within 3 year(s) from the date of this loan, I agree to pay a prepayment penalty in an amount equal to 6.00% of the balance of the loan outstanding on the date of prepayment. This amount, known as a prepayment penalty, will be in addition to any other amounts I owe under the provisions of the Note or the Security Instrument that secures the Note. If I make a prepayment in full on or after the 3rd anniversary date of the Note, the Note Holder will impose no prepayment penalty.

The debtors also signed a deed of trust conveying to EquiFirst a deed to secure debt with respect to the real property located at 410 Green Shadow Road, S.E., Cleveland, Bradley County, Tennessee (the "Property"), to secure repayment of the note.

On August 8, 2005, the debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On August 29, 2005, Deutsche Bank National Trust Company, as trustee for the holders of the EquiFirst loan, filed a proof of claim asserting a claim in the amount of $80,276.60. The proof of claim did not include the amount of the prepayment fee. On September 8, 2005, the court entered an order authorizing the sale of the Property for $92,000 with all liens to attach to the

sale proceeds. On September 9, 2005, Ocwen[1] provided the closing attorney with a payoff statement, adding a prepayment fee of $4,586.50 and other fees, costs, and charges to the sums itemized in the proof of claim. On September 13, 2005, the debtors filed their objection to Ocwen's claim, seeking the disallowance of the prepayment fee, as well as six other components of the claim (as supplemented by the payoff statement) totaling $1,615.01, and seeking an order authorizing the closing attorney to remit to the Chapter 13 trustee the balance of the sale proceeds being held in escrow pending a resolution of the objection, which total $6,201.51.

As indicated above, Ocwen has provided documentation to the debtors demonstrating the validity of three of the questioned claim components and Ocwen has withdrawn its assertion of a right to three other components. The only remaining issue, therefore, is whether the prepayment fee must be allowed as part of the claim under 11 U.S.C. § 506(b). At the time this case was commenced, that statute provided:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

A prepayment fee is a "fee" or "charge" within the meaning of § 506(b). *E.g.*, *Continental Sec. Corp. v. Shenandoah Nursing Home P'ship*, 193 B.R. 769, 775 (W.D. Va.), *aff'd*, 104 F.3d 359 (4th Cir. 1996); *In re Imperial Coronado Partners, Ltd.*, 96 B.R. 997, 1000-01 (B.A.P. 9th Cir. 1989).

---

[1] Apparently Ocwen (identified in the objection as "Ocwen Federal FSB" but in the response to the objection as "Ocwen Loan Servicing, LLC") is the successor in interest to EquiFirst or is servicing the loan for its holders.

The value of the Property exceeds Ocwen's claim by at least the $6,201.51 in sale proceeds being held in escrow, and the debtors do not dispute that the prepayment fee is provided for under the promissory note given to EquiFirst or that that agreement is enforceable under Tennessee law. Accordingly, the question to be resolved by the court is whether the fee is "reasonable" within the meaning of § 506(b).

As one bankruptcy court recently explained, for a prepayment fee to be "reasonable," there must be "some reasonable relationship between the amount of the penalty and the lender's actual loss caused by the prepayment." *In re Bess Eaton Donut Flour Co.*, Nos. 04,10630, 04-10682, 2005 WL 1367306, at *2 (Bankr. D.R.I. Jan. 19, 2005) (citing In re A.J. Lane & Co., 113 B.R. 821 (Bankr. D. Mass. 1990)). "A prepayment charge formula must effectively estimate actual damages, otherwise, the charges may operate as either a penalty on the debtor or a windfall to a lender, at the expense of other creditors of the bankruptcy estate. Only a prepayment charge formula which reasonably measures actual damages will be respected under § 506(b)." *In re Schwegmann Giant Supermarkets P'ship*, 264 B.R. 823, 828 (Bankr. E.D. La. 2001) (quoting *In re Duralite Truck Body & Container Corp.*, 153 B.R. 708, 714 (Bankr. D. Md. 1993)), *aff'd*, 287 B.R. 649 (E.D. La. 2002); *accord*, *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993). "[P]repayment premiums are intended to protect lenders from a drop in interest rates between the date a loan is made and the prepayment date." *Imperial Coronado Partners*, 96 B.R. at 1001. A prepayment formula that presumes a loss – one that "produces the same result, regardless of whether market interest rates have gone up or down since inception of the loan" – is unreasonable because it does not represent an attempt to predict actual damages resulting from a prepayment. *Schwegmann*

*Giant Supermarkets P'ship*, 264 B.R. at 829 (quoting *Duralite*, 153 B.R. at 714-15), *aff'd*, 287 B.R. at 655-56.

In this case, there was no reasonable relationship between the prepayment fee and the loss to the lender resulting from prepayment. In fact, the structure of the loan virtually guaranteed that there would be no loss during the first three years – the very period during which a prepayment fee is imposed. During that three-year period, interest is limited to an artificially low fixed rate, so Ocwen did not need protection from a "drop in [market] interest rates between the date [the] loan [was] made and the prepayment date" since such a drop is, by design, a virtual impossibility. Indeed, Ocwen itself takes the position that the initial fixed rate was below the market rate over the first three years.[2] Accordingly, the early repayment of the loan actually worked to Ocwen's *benefit*, because it enabled Ocwen to re-lend the funds at a higher rate of interest. Because the floating rate to commence three years into the loan could not be less than the initial fixed rate (but could be as much as 6% higher), the prepayment fee was applicable only during the period that the interest rate was at its lowest and so the fee could not be designed to compensate the lender for drops in market rates. Even if the parties did consider a market rate drop to be a possibility so that a prepayment fee would be necessary to protect the lender, the formula for computing the amount of the fee – a flat 6% of the loan balance at the time of prepayment – bears no relationship to the potential loss.

---

[2] Ocwen made this argument in postulating that the debtors agreed to the prepayment fee in exchange for the lower initial interest rate, but submitted no evidence in support of that assertion. Moreover, if the purpose of the fee was to discourage prepayment while the introductory interest rate was in effect, the provision failed of that purpose because the debtors could have prepaid the loan without penalty while the initial reduced rate was still in effect (between February 10, 2006, when the prepayment fee provision terminated and February 15, 2006, when the rate became a floating rate).

For all the foregoing reasons, the court will enter an order disallowing the "prepayment fee" portion of Ocwen's claim and implementing the parties' agreements regarding other issues presented by the objection to claim.

###